<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RYAN CRESPO,<br><br>        Plaintiff,<br>v.<br><br>SKILLSOFT (US) LLC,<br><br><br>        Defendant. | Civil Action No.: 24-00492<br><br>**OPINION**<br><br>October 3, 2024 |

**SEMPER**, District Judge.

Before the Court is Defendant Skillsoft (US) LLC's ("Defendant") motion to compel arbitration and dismiss or stay Plaintiff Ryan Crespo's ("Plaintiff") Complaint. (ECF 8, "Def. Br.") Plaintiff filed a brief in opposition. (ECF 11, "Opp.") Defendant filed a reply. (ECF 12, "Reply.") The Court reviewed the Plaintiff's Complaint (ECF 1-1, "Compl.") and the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's motion is **GRANTED.**

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from the termination of Plaintiff's employment with Defendant. Specifically, Plaintiff alleges that Defendant failed to pay him the full commissions owed to him pursuant to Defendant's Commission Pay Policy, and when Plaintiff requested the full commissions owed, he was discharged. (Compl. ¶¶ 5-8.) Plaintiff alleges Defendant violated the New Jersey Conscientious Employee Protection Act by discharging Plaintiff in retaliation for his objections to conduct that he reasonably believed violated applicable wage laws. (*Id.* ¶ 17.) Plaintiff further alleges Defendant violated the New Jersey Wage and Hour Law by knowingly

failing to pay Plaintiff the full wages due to him. (*Id.* ¶ 20.) Plaintiff initiated this action in the Superior Court of New Jersey, Law Division, Hudson County. (*See generally id.*) On January 26, 2024, Defendant removed the action to this Court based on diversity jurisdiction. (*See* ECF 1.) On March 4, 2024, Defendant moved to compel arbitration and dismiss or stay the action pending resolution of arbitration proceedings. (ECF 8.)

## II.   LEGAL STANDARD

The Court must first determine what standard to apply in analyzing Defendant's motion to compel arbitration. "Where the affirmative defense of arbitrability of claims is apparent on the face of the complaint (or . . . documents relied upon in the complaint)," courts apply the Federal Rule of Civil Procedure 12(b)(6) standard to decide a motion to compel arbitration. *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 773-74 (3d Cir. 2013) (quoting *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 481 (E.D. Pa. 2011)). However, the Rule 12(b)(6) standard is inappropriate when the complaint does not contain the "requisite clarity to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement[.]" *Guidotti*, 716 F.3d at 774 (internal quotations and citations omitted). Here, Defendant maintains that Plaintiff must arbitrate his claims because of an arbitration provision present in a contract between the parties entitled "Skillsoft At Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement" (hereinafter "Employment Agreement"). (Def. Br. at 7-12.) Plaintiff does not rely on or reference this document in his Complaint. Furthermore, the Complaint does not reference any arbitration agreement. Accordingly, Defendant's arbitration defense is not clear from the face of the

2

Complaint, and the Court must go beyond the face of the pleading to address Defendant's arguments.

Therefore, the Court must employ the Federal Rule of Civil Procedure 56 standard to "ensur[e] that arbitration is awarded only if there is an express, unequivocal agreement to that effect." *Guidotti*, 716 F.3d at 775 (internal quotation omitted). In *Guidotti*, the Third Circuit explained that

> if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Id.* at 776; *see also Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 317 (3d Cir. 2022) (explaining that after the plaintiffs "brought forth sufficient facts to place the arbitration agreements in question," they should have been allowed limited discovery on the issue of arbitrability before the defendant had an opportunity to file a renewed motion to compel arbitration).

Here, however, neither party contends that discovery is necessary. Moreover, Plaintiff has not raised additional facts sufficient to place the agreement to arbitrate in issue such that additional discovery is necessary. As a result, the Court will decide Defendant's motion under the Rule 56 standard without providing the parties leave for limited discovery. *See, e.g.*, *Kamineni v. Tesla, Inc.*, No. 19-14288, 2020 WL 57867, at *2 (D.N.J. Jan. 6, 2020).

Under Rule 56, a moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id*. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)).

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to show there is a genuine issue of material fact. *Id*. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III.   ANALYSIS

The Federal Arbitration Act ("FAA") "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009) (citing 9 U.S.C. § 1 *et seq*.). "Congress designed the FAA to overrule the judiciary's longstanding reluctance to

enforce agreements to arbitrate . . . and in the FAA expressed a strong federal policy in favor of resolving disputes through arbitration." *Id.* (internal quotations omitted). "The strong federal policy favoring arbitration, however, does not lead automatically to the submission of a dispute to arbitration upon the demand of a party to the dispute." *Id.* Instead, "[b]efore compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Id.* (citing *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)).[1]

To determine the validity of an arbitration agreement, courts apply "ordinary state-law principles that govern the formation of contracts." *Kirleis*, 560 F.3d at 160 (quoting *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995)). The Employment Agreement states: "This Agreement will be governed by the laws of the State of New Hampshire, *except with respect to the provisions of this Agreement pertaining to arbitration of disputes, which shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq.*" (ECF 8-2, Ex. B (emphasis added).) In analyzing the issue of whether there was an agreement to arbitrate, both Defendant and Plaintiff cite to federal law and New Jersey law in their briefs. Accordingly, the Court will apply New Jersey law to assess whether there is an agreement to arbitrate here.[2]

To be enforceable pursuant to New Jersey law, an arbitration agreement "must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim." *Leodori v. CIGNA Corp.,* 814 A.2d 1098, 1104 (N.J. 2003). Moreover, "[a]n agreement to arbitrate, like any

---

[1] This Court retains the ultimate authority to determine arbitrability unless "the parties clearly and unmistakably provide otherwise." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 648 (1986); *see also Morgan v. Sandord Brown Inst.*, 137 A.3d 1168, 1177 (N.J. 2016) ("the law presumes that a court, not an arbitrator, decides any issue concerning arbitrability"). The Employment Agreement does not designate the threshold issue of arbitrability to an arbitrator; accordingly, the Court will address the issue.

[2] *See Manley Toys, Ltd. v. Toys R Us, Inc.,* No. 12-244737, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case." (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999))).

other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 312-13 (N.J. 2014) (quoting *NAACP of Camden Cnty. E. v. Foulke Mgmt.*, 24 A.3d 777, 790 (N.J. Super. Ct. App. Div. 2011)). Mutual assent requires that the parties understand the terms to which they purportedly agree. "[B]ecause arbitration involves a waiver of the right to pursue a case in a judicial forum, 'courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent.'" *Atalese*, 99 A.3d at 313 (quoting *Foulke*, 24 A.3d 777, 790-91).

>Section 10A of the Employment Agreement provides:
>
>>Arbitration. Any and all controversies, claims or disputes involving me and the Company and/or any current or former parent corporation, subsidiary, corporate affiliate, related company, agent, employee, officer, director, shareholder or benefit plan of the Company in their capacity as such or otherwise (collectively, "Covered Entities"), arising under or with respect to this Agreement or arising out of, relating to or resulting from my past, current, or future employment with the Company (collectively, "Covered Claims") shall be resolved exclusively through bi-lateral arbitration between me and such Covered Entity, including without limitation any claims relating to harassment or discrimination of any kind, the payment of wages or other compensation, any form of retaliation, the accommodation of a disability, or termination of employment. This arbitration clause shall survive the termination of my employment with the Company.

(ECF 8-2, Ex. B.) Section 10C of the Employment Agreement states, "[t]he Company and I agree that either party may invoke arbitration, that any arbitration will be administered by the American Arbitration Association ("AAA"), and that the Employment Arbitration Rules and Mediation Procedures in effect at the time a demand for arbitration is filed will apply[.]" (*Id.*) Section 10G of the Employment Agreement provides:

>>Voluntary Nature of Agreement. I ACKNOWLEDGE AND AGREE THAT I AM EXECUTING THIS AGREEMENT

> VOLUNTARILY AND WITHOUT ANY DURESS OR UNDUE INFLUENCE BY THE COMPANY OR ANYONE ELSE. I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE CAREFULLY READ THIS AGREEMENT AND THAT I HAVE ASKED ANY QUESTIONS NECESSARY FOR ME TO UNDERSTAND THE TERMS, CONSEQUENCES AND BINDING EFFECT OF THIS AGREEMENT. **I FURTHER ACKNOWLEDGE AND AGREE THAT I FULLY UNDERSTAND THIS AGREEMENT, AND THAT I AM KNOWINGLY, VOLUNTARILY, AND IRREVOCABLY WAIVING MY RIGHT TO BRING A LAWSUIT IN COURT AND MY RIGHT TO A JURY TRIAL.** FINALLY, I AGREE THAT I HAVE BEEN PROVIDED AN OPPORTUNITY TO SEEK THE ADVICE OF AN ATTORNEY OF MY CHOICE BEFORE SIGNING THIS AGREEMENT.

(ECF 8-2, Ex. B (bold in original).) On July 14, 2021, Plaintiff signed the Employment Agreement. (*Id.*) Plaintiff does not dispute the validity of his signature or that he entered into this Employment Agreement with Defendant. Instead, Plaintiff challenges the enforceability of the Employment Agreement's arbitration provision with three arguments: (1) the arbitration clause at issue does not meet New Jersey's requirements for the clear, knowing, and voluntary waiver of the constitutional and statutory rights to a jury trial; (2) the provision is ambiguous as to whether arbitration is permissive or mandatory; and (3) Defendant's unilateral reservation of its right to obtain injunctive relief in court renders the arbitration agreement unenforceable as an unconscionable contract of adhesion. (Opp. at 1.) First, in support of his jury trial argument, Plaintiff relies on a criminal case enumerating the requirements for jury trial waivers. (*Id.* at 3 (citing *State v. Blann*, 217 N.J. 517 (2014).) That case does not apply here. Rather, in *Atalese*, the New Jersey Supreme Court stated,

> We do not suggest that the arbitration clause has to identify the specific constitutional or statutory right guaranteeing a citizen access to the courts that is waived by agreeing to arbitration. But the clause, at least in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute.

7

*Atalese*, 99 A.3d at 315-16. Here, the Employment Agreement clearly states, in bold, that "**I FURTHER ACKNOWLEDGE AND AGREE THAT I FULLY UNDERSTAND THIS AGREEMENT, AND THAT I AM KNOWINGLY, VOLUNTARILY, AND IRREVOCABLY WAIVING MY RIGHT TO BRING A LAWSUIT IN COURT AND MY RIGHT TO A JURY TRIAL.**" (ECF 8-2, Ex. B.) Together, this language and Plaintiff's undisputed signature on the Employment Agreement establish Plaintiff's wavier of his right to a jury trial.

Second, in arguing that the arbitration provision is ambiguous as to whether arbitration is permissive or mandatory, Plaintiff asserts that "[w]hile the first paragraph of the arbitration provision states that the specified disputes '*shall* be resolved exclusively through bi-lateral arbitration', the third paragraph contradicts the foregoing language by providing that '[t]he Company and I agree that either party *may* invoke arbitration.'" (Opp. at 7.) Plaintiff asserts that the differing "shall" and "may" language renders the arbitration provision ambiguous. However, Plaintiff's argument is inconsistent with the plain meaning of the contract. "May" refers to which party can invoke arbitration, meaning that either Plaintiff or Defendant can initiate an arbitration proceeding. "Shall," however, refers to the parties' requirement to arbitrate disputes, regardless of who initiates the arbitration proceeding. Moreover, the Employment Agreement elsewhere provides that "arbitration shall be the sole, exclusive and final remedy for any dispute involving any Covered Claim between me and the Company. Accordingly, except as provided for by this Agreement, neither I nor the Company will be permitted to pursue court action regarding Covered Claims." (ECF 8-2, Ex. B § 10D.) Accordingly, the Employment Agreement is not ambiguous in communicating that arbitration is mandatory.

Finally, Plaintiff argues that Defendant's unilateral reservation of its right to obtain injunctive relief in court renders the arbitration agreement unenforceable as an unconscionable contract of adhesion. (Opp. at 10-13.) However, he does not cite any New Jersey case law to support the proposition that a lack of mutuality of obligation renders a contract adhesive. In New Jersey, "the essential nature of a contract of adhesion is that it is presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the 'adhering' party to negotiate except perhaps on a few particulars." *Vitale v. Schering-Plough Corp.*, 174 A.3d 973, 980 (N.J. 2017) (quoting *Rudbart v. N. Jersey Dist. Water Supply Com.*, 605 A.2d 681, 685 (N.J. 1992)). Adhesion contracts are not *per se* unenforceable, but a court may decline to enforce them if they are found to be unconscionable. *Vitale*, 174 A.3d at 980. To determine whether a contract of adhesion is so oppressive or inconsistent with public policy that it would be unconscionable to enforce the contract, courts consider four factors: (1) the subject matter of the contract; (2) the parties' relative bargaining positions; (3) the degree of economic compulsion motivating the adhering party; and (4) the public interests affected by the contract. *Id.* Plaintiff has failed to set forth procedural or substantive unconscionability. He argues that the Employment Agreement was a standardized form, but he otherwise fails to support his position.

Therefore, the Employment Agreement contains a valid agreement to arbitrate. To reiterate, on July 14, 2021, Plaintiff signed the Employment Agreement. (ECF 8-2, Ex. B.) Plaintiff does not dispute the validity of his signature or that he entered into this Employment Agreement with Defendant. (*See generally* Opp.) His arguments as to the invalidity of the arbitration agreement are unavailing. Accordingly, the Court must next address whether the claims at issue fall within the scope of the arbitration agreement. Here, it is clear the claims do. Section 10A of the Employment Agreement specifically states that claims relating to "the payment of wages or

other compensation, any form of retaliation, . . . or termination of employment" must be arbitrated. (ECF 8-2, Ex. B.) Here, Plaintiff alleges Defendant violated (i) the New Jersey Conscientious Employee Protection Act by discharging Plaintiff in retaliation for his objections to conduct that he reasonably believed violated applicable wage laws, and (ii) the New Jersey Wage and Hour Law by knowingly failing to pay Plaintiff the full wages due to him. (Compl. ¶¶ 17, 20.) These claims fall squarely within the scope of the arbitration agreement. Accordingly, Defendant's motion to compel arbitration is **GRANTED**, and the current matter is **STAYED**.

### IV.     CONCLUSION

For the reasons stated above, Defendant's motion to compel arbitration (ECF 8) is **GRANTED**, and the current matter is **STAYED.** An appropriate order accompanies this opinion.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:   Clerk
cc:     Cathy L. Waldor, U.S.M.J.
        Parties